UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| RICHARD R. DIGGS, | ) | CIVIL ACTION 4:09-3257-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

## I. PROCEDURAL HISTORY

Plaintiff, Richard R. Diggs, filed an application for DIB on May 29, 2007, with an alleged onset of disability of October 15, 2004, as a result of mental illness and depression. At the time of the hearing, Plaintiff amended his onset date to August 28, 2006. Plaintiff requested a hearing before an administrative law judge (ALJ) after his claims were denied initially and on reconsideration. At Plaintiff's request, an ALJ conducted a hearing on February 25, 2009, at which

both Plaintiff and a vocational expert (VE) appeared and testified. On April 14, 2009, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 9-20). After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). Plaintiff filed the instant action on December 21, 2009.

## II. FACTUAL BACKGROUND

The Plaintiff was born on March 3, 1957, and was fifty-one years of age at the time of his hearing before the ALJ. (Tr. 28). Plaintiff has less than a twelfth grade education and past work experience as an inventory clerk, stoker, flagger, lumbar handler, floor worker, and truck driver. Plaintiff worked from June 17, 2008, until December 9, 2008, as a flagman for the Highway Department. He and his wife testified at the hearing that he had been "written up" by the Department for standing too close to traffic, inability to follow directions on chaining down backhoes, and inability to locate roads for pothole repairs. Plaintiff testified that he quit the job before they terminated him knowing he could not do the required work. The ALJ found that this job was an unsuccessful work attempt. (33-34, 38-39, and 60-62, 11).

## III. DISABILITY ANALYSIS

The Plaintiff argues as follows, quoted verbatim:

1.    The ALJ erred in failing to properly evaluate Plaintiff's subjective symptoms.

2.    The ALJ erred in determining that Plaintiff is not disabled, which is directly contradicted by the medical opinion of his treating psychiatrist and the corroborative opinion of the examining State agency psychologist.

    3.       The ALJ erred in finding that Plaintiff could return to past relevant work as a "floor worker," which is not a job he ever performed.

    4.       The ALJ erred in finding that Plaintiff's recurrent foot lesions and side effects of his medications are not "severe" impairments.

(Plaintiff's brief).

The Commissioner contends that the ALJ did not commit these errors and urges that substantial evidence supports the determination that Plaintiff was not disabled. In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings in his decision of April 14, 2009:

    1.       The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

    2.       The claimant has not engaged in substantial gainful activity since August 24, 2006, the amended alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

    3.       The claimant has the following severe impairment: alcohol abuse/dependency, psychotic disorder versus schizoaffective disorder, and major depressive disorder (20 CFR 404.1520(c)).

    4.       The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

    5.       After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he must work in a low stress environment that does not involve interaction with the general public.

    6.       The claimant is capable of performing past relevant work as a floor worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

      7.      The claimant has not been under a disability, as defined in the Social Security Act, from August 24, 2006, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 9-20).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether

the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

## IV.  ANALYSIS

a. Credibility

Plaintiff argues the ALJ erred in failing to properly evaluate his subjective symptoms. Specifically, Plaintiff states that, "[h]ere the ALJ concedes that he has objective evidence of 'severe' mental impairments which could reasonably be expected to produce the subjective symptoms alleged" and, therefore, must proceed to an analysis of the intensity and persistence of those symptoms and the extent to which they affect his ability to work under Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).(Plaintiff's brief, p. 6). Plaintiff argues the ALJ summarized the testimony at the hearing but did not conduct a proper evaluation in violation of Craig and SSR 96-7p.  Instead, Plaintiff contends the ALJ failed to cite to what "other evidence of record" refutes the testimony of Plaintiff and his wife, failed to indicate which testimony he found credible or that which he rejected, failed to evaluate Plaintiff's daily activities or the extent to which his testimony and that of his wife regarding the side effects of his medications are consistent with prior statements in the record and observations by medical sources, and failed to make reference to Plaintiff's excellent 33-year-work history.

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps.  First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged.  Not until such underlying impairment is deemed established does the fact finder proceed to the second step:  consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective

complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

The ALJ found at step one under Craig that Plaintiff had impairments capable of producing the symptoms that he alleged and, accordingly, proceeded to step two. Plaintiff, however, complains that the ALJ failed to follow established procedures in performing this assessment and failed to provide specific explanations. The undersigned agrees.

After summarizing Plaintiff's statements in his disability reports, his testimony at the hearing, and his wife's testimony, the ALJ concluded Plaintiff's testimony was not credible and stated the following:

> The statements and testimony regarding the claimant's depression and other mental symptoms with resulting limitations are not consistent and are also not fully consistent with the other evidence of record. After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 19).

The ALJ erred in his analysis of the Plaintiff's credibility and failed to comply with SSR 96-7p. The ALJ failed to discuss the objective verification of Plaintiff's complaints in assessing his credibility and determining his RFC. The ALJ only summarized the testimony of Plaintiff and his wife along with what he entered on his applications. The ALJ did not set forth what evidence was contradictory to Plaintiff's testimony or what objective evidence was not consistent with his statements and testimony. Therefore, this case is remanded for proper consideration and explanation of findings as to the Plaintiff's subjective complaints considered with the medical evidence. On remand, the Commissioner can address these issues in accordance with Ruling 96-7p and Craig v. Chater, supra.

b. Physician's opinion

Plaintiff next argues the ALJ erred in determining that he was not disabled which is directly contradicted by the medical opinions of his treating psychiatrist, Dr. Angela Hollis, and the corroborative opinion of the examining State agency psychologist, Dr. Ritterspach. Additionally, Plaintiff argues that the non-examining State agency psychological consultants, Drs. Kevin King and Lisa Klohn, "[a]lso found that Plaintiff was disabled at the time of their paper review evaluations in September 2006 and March 2007 (Tr. 268, 334), but both concluded that his disability was materially due to ongoing alcoholism, a finding which is unsupported by the record after the August 2006 Chesterfield Hospital admission." (Plaintiff's brief, p. 4).

Although the regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b), treating physician opinions are accorded special status, see id. § 404.1527(d)(2). "Courts typically 'accord greater weight to the testimony of a treating physician because the treating

physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson, 434 F.3d at 654) (internal citation omitted). The rule, however, does not mandate that her opinion be given controlling weight. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). "It is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 61 Fed. Reg. 34,490-01, 34,491 (July 2, 1996); see also 20 C.F.R. § 404.1527. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

The ALJ's decision with respect to Dr. Ritterspach's opinion provides as follows:

On mental status examination, Dr. Ritterspach noted that the claimant did not make appropriate eye contact. He further noted that the claimant was oriented x3, but that mood was depressed and affect was flat. Thought process was logical and grounded, and the claimant denied having any suicidal ideation. However, he said he was having hallucinations. Dr. Ritterspach felt that the claimant had normal intellectual functioning, and he noted that memory and concentration were normal. He rendered a diagnosis of schizoaffective disorder. He commented at the end of his report that the claimant's ability to complete daily activities is compromised in the following areas: self-care, household chores, driving, preparing meals, shopping, managing money, and caring for children. He stated that the claimant has average verbal reasoning, but below average math and social skills, he said the claimant is able to ascertain dangers of everyday situations and take necessary action to avoid physical danger, and the claimant is able to understand, retain, and follow directions. He said the claimant is able to sustain attention to perform simple repetitive tasks; but that he does not have the energy or motivation to complete daily tasks, including self-care activities. He gave his assessment that the claimant has below-average ability to

9

relate to others, including fellow workers and supervisors; and that the claimant could not tolerate the mental stress and pressures associated with everyday work activity.

In the present case, I have fully considered Dr. Ritterspach's assessment of the claimant's functional abilities and limitations. However, he appears to rely almost entirely on the statements from the claimant and his wife in determining the claimant's abilities and limitations; and his assessment is not fully consistent with his own examination or the other medical evidence of record. The lengthy progress notes from the Mental Health Center show that the claimant responds well to his medications and show a much higher level of functioning than is indicated in Dr. Ritterspach's report. For these reasons, I give less weight to his assessment.

(Tr. 14).

The ALJ concluded the following with respect to Dr. Hollis' opinion:

On February 24, 2009, Dr. Angela Hollis of the Mental Health Center completed an "Ability to Do Work Related Activities["] (Mental) in which she said the claimant is unable to remember work-like procedures, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, perform at a consistent pace without an unreasonable number and length of rest periods, and be aware of normal hazards and take appropriate precautions. She indicated that the claimant is seriously limited, but not precluded from the following: understanding and remembering very short and simple instructions, carrying out very short and simple instructions, maintaining attention for two-hour segments, maintaining regular attendance and being punctual within customary and usually strict tolerances, sustaining an ordinary routine without special supervision, completing a normal workday and work week without interruptions from psychologically-based symptoms, asking simple questions for requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in a routine work setting. She stated that the claimant has limited but satisfactory ability to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, and dealing with normal work stress. She indicated that the claimant is unable to meet competitive standards in ability to understand and remember detailed instructions, carry out detailed instructions, set realistic goals or make plans independently of others, deal with stress of semi skilled and unskilled work, interact appropriately with the general public, and maintain socially appropriate behavior. She indicated that the claimant is seriously limited, but not precluded from adhering to basic standards of neatness and cleanliness and traveling to unfamiliar places. Lastly, she indicated the claimant has limited but satisfactory ability to use public transportation. She said the claimant is likely to be absent from work about three days per month because of his impairments.

> . . . In the present case, it is not clear from the treatment records whether Dr. Hollis has been the claimant's treating physician or, if so, for how long, as her name does not appear anywhere on the great majority of the treatment notes. While I have fully considered her assessment of the claimant's abilities and limitations due to his mental impairments, I find that her assessment was not fully consistent and is also not consistent with the lengthy progress notes from the Mental Health Center. The Mental Health Center progress notes show that the claimant has responded well to treatment with medications, and the notes show a much higher level of functioning than is reflected by Dr. Hollis's answers in the questionnaire. More specifically, those treatment notes routinely describe the claimant as "doing good," "stable," or "in full remission" in multiple dates in 2007 and 2008. Further, the claimant's work with the SC Department of Transportation for a period of approximately 6 months is inconsistent with the level of impairment she described in her assessment.[1] I find th[at] Dr. Hollis's assessment is not consistent with the other substantial evidence of record; and I therefore give less weight to her assessment.

(Tr. 15-16).

It is noted that both Plaintiff and Defendant acknowledge that Plaintiff was seen several times over the years at CMHC, a county mental health clinic, by different psychiatrists including Dr. Hollis who evaluated Plaintiff on at least September 2, 2008, September 23, 2008, October 21, 2008, and February 2009. Dr. Hollis submitted a completed form regarding Plaintiff's ability to perform work-related activities dated February 24, 2009. In this report, Dr. Hollis concluded Plaintiff was unable to meet competitive standards in the areas of remembering work-like procedures; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; performing at a consistent pace without an unreasonable number and length of rest periods; and being aware of normal hazards and take appropriate precautions due to decreased ability to concentrate due to diagnosis of Bi-polar Disorder, and stress which causes decompensation and symptoms of psychosis, such as auditory hallucinations. Dr.

---

[1] Previously in the decision, the ALJ concluded that this job was not considered substantial gainful activity but was found to be an unsuccessful work attempt. (Tr. 11).

Hollis further concluded Plaintiff was unable to meet competitive standards in the areas of understanding, remembering, and carrying out detailed instructions; setting realistic goals or making plans independently of others; dealing with stress of semiskilled and skilled work; interacting appropriately with the general public and maintain socially appropriate behavior. Dr. Hollis opined Plaintiff's impairments or treatment would cause him to be absent from work about three days per month. (Tr. 370-371).

As set out above, the ALJ discounted Dr. Hollis' opinion finding he did not know if Dr. Hollis had been Plaintiff's treating physician. However, as discussed, Dr. Hollis did in fact evaluate and treat Plaintiff at the Clinic. Additionally, the ALJ states the treatment notes from the CHMC reveal Plaintiff was "doing good", "stable" or "in full remission" but did not point to any specific date or note in the record. Therefore, the ALJ appears to only take excerpts from the notes in which Plaintiff may have been doing good on that specific date. Additionally, the ALJ does not specify which impairment he notes as being "in full remission." Also, the ALJ did not discuss the fact that Plaintiff was still described as having poor judgment, and his Haldol injections were increased in May 2007, and again in February 2009, due to aggravation of psychotic and depressive symptoms. (Tr. 303, 307, 314, 348, 355, 357, 359, 361, 363, 368). In the records dated September 6, 2006, it was noted that Plaintiff was taken by the police to Chesterfield General Hospital after holding his grandson hostage. (Tr. 307). Even though his mood was described as good, his insight and judgement were listed as poor and he reported hearing voices. (Id.). In the report dated December 5, 2006, it notes Plaintiff indicated he lost his job because he could not focus. He was depressed and started on Lithium in addition to his other medications. His judgment and insight were noted as being poor. (Tr. 312). On December 19, 2006, it was noted that Plaintiff had not consumed any

alcoholic drink, was still having problems focusing, insight and judgment were poor and his Lithium dosage was increased. (Tr. 314). In the notes dated October 21, 2008, Dr. Hollis noted that Mr. Diggs denied being depressed but he found his insight and judgment poor, and diagnosed him with bipolar disorder. (Tr. 348). His judgment and insight were listed as poor on August 15, 2007, September 14, 2007, December 14, 2007, March 14, 2008. It was noted on August 15, 2007, that he was not doing well and stated that "Sometimes I think of ending it all" but had no plan or intent. His mood and affect was constricted and "alright" and he was diagnosed with psychotic disorder and bipolar disorder. (Tr. 361). On May 16, 2007, Plaintiff reported that he had worsening of auditory hallucinations for which his dosage of Haldol was increased and his insight and judgment were listed as poor. Plaintiff reported on February 16, 2007, that he was "out of it" stating that maybe his medicine was making him feel that way. His insight and judgment were poor and he was diagnosed as psychotic disorder and bipolar disorder. (Tr. 368). On February 18, 2009, Plaintiff reported still hearing voices, and it was noted that he had not missed any of his injections. Plaintiff's dosage of Haldol was increased.

    Throughout the records, there are notations that he was doing better on some visits, that his depressive episode was in remission, but the notes indicate he continued to hear voices and to have poor insight and judgment with his medication being increased. It appears that the notes from CMHC may support the opinion of Dr. Hollis who evaluated and treated Plaintiff herself at the clinic. Further, it appears from the records that Dr. Hollis and Dr. Ritterspach are specialists in their field and Dr. Hollis may be a treating physician.[2]  However, this court cannot perform a proper

---

[2] It appears from the evidence that Dr. Hollis may be a treating physician and her opinions should be given the proper weight. A physician qualifies as a "treating source" if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment

review of the ALJ's determination because the ALJ's analysis is inadequate and not in compliance with Craig, supra and SSR 96-7p.

The ALJ also rejected the opinion of Dr. Ritterspach, the agency's examining consultative psychologist, who opined that Plaintiff could not "tolerate the mental stress and pressures associated with day-to-day activity." (Tr. 321). The ALJ rejected Dr. Ritterspach's opinion stating it was not consistent with his examination or other medical evidence or record. However, Dr. Ritterspach conducted a comprehensive psychological evaluation observing and testing Plaintiff as a specialist in his field. Dr. Ritterspach noted in his report that Plaintiff "showed no signs of malingering." (Tr. 321). Dr. Ritterspach also noted Plaintiff did not make appropriate eye contact, and his mood was flat and depressed with admitted hallucinations. Dr. Ritterspach conducted tests upon Plaintiff finding he could not complete serial 7s or serial 3's, could not compute correctly, and could not recall the three words given. Dr. Ritterspach concluded Plaintiff had a depressed mood, low motivation, low energy, social avoidance, and disturbance of appetite. He further concluded Plaintiff's "ability to complete daily activities of living are compromised in the following areas: self-care, household chores, driving, preparing meals, shopping, managing money, and caring for children. He has average verbal reasoning, but below-average mathematical and social skills.' (Tr. 321). Dr. Ritterspach further opined that Plaintiff can sustain attention or perform simple, repetitive tasks, but "he often does not have the energy or motivation to complete daily tasks, including self-care activities. He has below average ability to relate to others including fellow workers and supervisors. He could not tolerate the mental stress and pressures associated with day-to-day work activity." (Tr. 321).

---

and/or evaluation required for [the] medical condition(s)." § 20 C.F.R. 404.1502

The ALJ gave little weight to the opinions of two mental health specialists, a treating psychiatrist and examining psychologist. The ALJ did not cite to any contradictory medical opinions from another psychologist, psychiatrist, or medical provider with regard to Plaintiff's functional limitations or adequately explain his reasons for reducing the weight given to, or rejection of, the opinions of Dr. Hollis and Dr. Ritterspach. Therefore, it is ordered that this case be remanded for the ALJ to conduct a proper analysis of the treating and consultative physicians' opinions giving them the proper weight pursuant to <u>Craig</u> and SSR 96-7p. As this case is being remanded for proper analysis of the physicians' opinions and Plaintiff's credibility, the remaining issues will not be addressed as they are dependent on a proper analysis of these two issues.

### V.  CONCLUSION

For the reasons set forth above, IT IS ORDERED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion.

**IT IS SO ORDERED**.

<u>s/Thomas E. Rogers, III</u><br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

March <u>11</u>, 2011
Florence, South Carolina